# EXHIBIT A

Date Filed 1/4/2023 4:04 PM
Superior Court - Plymouth
Docket Number

**RECEIVED**

1/4/2023

**COMMONWEALTH OF MASSACHUSETTS**

Plymouth County

**DEPARTMENT OF THE TRIAL COURT**
**PLYMOUTH SUPERIOR COURT**

ABINGTON/ROCKLAND JOINT WATER
WORKS,

       Plaintiff,

vs.

3M COMPANY (f/k/a Minnesota Mining and
Manufacturing, Co.; ANGUS FIRE;
AGC CHEMICAL AMERICAS, INC.; AGC
INC. F/K/A ASAHI GLASS CO.;
ARCHROMA MANAGEMENT LLC;
ARCHROMA US, INC.; ARKEMA INC.;
BASF CORPORATION; BUCKEYE FIRE
PROTECTION CO.; CARRIER GLOBAL
CORPORATION; CHEMDESIGN
PRODUCTS, INC.; CHEMGUARD;
CHEMICALS INC.; CHUBB FIRE, LTD.;
CLARIANT CORP.; CORTEVA, INC.;
DEEPWATER CHEMICALS, INC.; DOE
DEFENDANTS, JOHN 1-49; DUPONT DE
NEMOURS, INC.; DYNAX CORP.; E.I. DU
PONT DE NEMOURS & COMPANY;
KIDDE-FENWAL, INC.; KIDDE PLC INC.;
NATIONAL FOAM, INC.; NATION FORD
CHEMICAL COMPANY; RAYTHEON
TECHNOLOGIES CORPORATION F/K/A
UNITED TECHNOLOGIES
CORPORATION; THE ANSUL COMPANY;
THE CHEMOURS COMPANY; THE
CHEMOURS COMPANY FC, LLC; TYCO
FIRE PRODUCTS, LP; AND UTC FIRE &
SECURITY AMERICAS CORPORATION,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT**

    Plaintiff Abington/Rockland Joint Water Works ("Plaintiff"), by and through its

undersigned counsel, brings this action against Defendants 3M Company, E. I. DuPont De

1

Nemours and Company, The Chemours Company, The Chemours Company, FC, LLC,

Chemguard, Inc., Tyco Fire Products, LP, Ansul Company, Kidde-Fenwal, Inc., National Foam

Inc., Angus Fire Armour Corporation, Buckeye Fire Equipment Company, AGC Chemical

Americas, Inc., AGC Inc. f/k/a Asahi Glass Co., Archroma Management LLC, Archroma US,

Inc. Arkema Inc., BASF Corporation, Carrier Global Corporation, ChemDesign Products, Inc.,

Chemicals Inc., Chubb Fire, LTD., Clariant Corp., Corteva, Inc., Deepwater Chemicals, Inc.,

DuPont De Nemours, Inc., Dynax Corp., Kidde PLC Inc., Nation Ford Chemical Company,

Raytheon Technologies Corporation f/k/a United Technologies Corporation, UTC Fire &

Security Americas Corporation, and John Doe Defendants 1-49 (collectively, "Defendants").

Plaintiff, based on information, belief and investigation of Counsel, alleges as follows:

## I.   SUMMARY OF THE CASE

1.   Plaintiff brings this action against Defendants in order to recover the considerable

costs and damages that it has incurred—and that it will inevitably continue to incur—as a result of

the presence of toxic compounds, identified as per- and polyfluoroalkyl substances ("PFAS"), in

Plaintiff's public water supply.

2.   Plaintiff's water is drawn from both surface water and ground water sources to

provide drinking water to the Towns of Abington and Rockland.  Plaintiff draws surface water

from the John F. Hannigan Memorial Reservoir in Rockland and the Great Sandy Bottom Pond in

Pembroke.  It also obtains groundwater from four groundwater wells.

3.   Plaintiff's water supply is currently contaminated with highly toxic PFAS

compounds, including perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), and

perfluorohexanesulfonic acid ("PFHxS").  PFOA and PFOS have long been manufactured as

components for aqueous film-forming foam ("AFFF")—a product used to control and extinguish

aviation, marine, fuel, and other shallow spill fires.

.

4.     PFOA and PFOS both are known to be toxic, persistent in the environment, not biodegrade, move easily through soil and groundwater, and pose a significant risk to human health and safety. Both are animal carcinogens and likely human carcinogens. Indeed, the United States Environmental Protection Agency ("EPA") has stated that "human epidemiology data report associations between PFOA exposure and high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregnancy- induced hypertension and preeclampsia, and cancer (testicular and kidney)" and that "there is suggestive evidence of carcinogenic potential for PFOS."[1]

5.     Upon information and belief, at various times throughout the 1960s to present date, Defendants designed, manufactured, marketed, distributed, and/or sold PFOA, PFOS, the chemical precursors of PFOA and/or PFOS, and/or AFFF containing PFOA, PFOS, and/or their chemical precursors (collectively, "Fluorosurfactant Products") throughout the United States, including in Massachusetts.

6.     At all relevant times, upon information and belief, Defendants knew, or reasonably should have known, about the inherent risks and dangers involved in the use of PFAS compounds in their products—including that both PFOA and PFOS are mobile in water, not easily biodegradable, highly persistent in the environment, and present significant and unreasonable risks to both human health and the environment. Nevertheless, Defendants made a conscious choice to manufacture, market, sale, and otherwise place Fluorosurfactant Products into the U.S. stream of commerce for decades, all while knowing PFAS compounds would be inevitably released into the

---

[1] See U.S. Envtl. Protection Agency ("EPA"), Office of Water Health and Ecological Criteria Division, "Health Effects Support Document for Perfluorooctanoic Acid (PFOA)," EPA Document Number: 822-R-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories- pfoa-and-pfos (last accessed 10/04/2021); see also EPA, Office of Water Health and Ecological Criteria Division, "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)," EPA Document Number: 822-R-16- 002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos (last accessed 10/04/2021).

environment—for instance, in the use of AFFF for fire protection, training, and response activities, even when used in the manners directed and intended by the manufacturer—and concealing their knowledge of the risks involved.

7.      At all relevant times, Plaintiff did not know, nor should it have reasonably known, of the ongoing contamination of its Property through the use of Defendants' Fluorosurfactant Products, as Defendants did not disclose the toxic nature and harmful effects of their Fluorosurfactant Products. Notably, Plaintiff's wells, water sources and supply, water supply and delivery system infrastructure, including any treatment systems, are collectively referred to as "Plaintiff's Property" in this Complaint.

8.      As a result of Defendants' unreasonable acts and omissions, PFAS compounds have migrated through the soil and into the groundwater, have entered into a critical source of water relied upon by Plaintiff to provide for its citizens and customers, and have contaminated Plaintiff's Property—thereby subjecting Plaintiff, its customers, and the general public to the inherent danger of these chemicals. As the manufacturers and sellers of Fluorosurfactant Products, Defendants are responsible for the PFAS contaminants released into Plaintiff's Property.

9.      Through this action, Plaintiff now seeks to recover all available damages arising from the continuous and ongoing contamination of Plaintiff's Property caused by Defendants' actions as asserted herein. Such damages include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property.

## II.    PARTIES

*A.    PLAINTIFF*

10.      Plaintiff is a municipal corporation organized under the laws of the Commonwealth, with its principal office at 366 Centre Avenue, Rockland, Massachusetts 02370.  Plaintiff owns and

operates a public water supply system pursuant to the Safe Drinking Water Act, 42 U.S.C. §
300(f)(15), and the reporting system of the U.S. EPA.

11.     Plaintiff's water is drawn from both surface water and ground water sources to
provide drinking water to the Towns of Abington and Rockland. Plaintiff draws surface water
from the John F. Hannigan Memorial Reservoir in Rockland and the Great Sandy Bottom Pond in
Pembroke and obtains groundwater from four groundwater wells. Plaintiff serves water to
residential, commercial, industrial, and municipal customers located within the Towns'
jurisdictional boundaries.

12.     Plaintiff's service area includes two local fire departments --- Abington Fire
Department and the Rockland Fire-Rescue Department --- that provide emergency and fire
response services in the areas around Plaintiff's water supplies. Upon information and belief,
Defendants' AFFF products were used for fire-training and fire-fighting activities conducted at
sites in and around Abington and Rockland.

13.     Plaintiff has a property interest in the water it appropriates, treats, stores, and
distributes to the public, as well as an interest in its wells, piping, distribution system, and treatment
facilities.

B.   *DEFENDANTS*

14.     Upon information and belief, the following Defendants designed, manufactured,
formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products that have
contaminated and continue to contaminate Plaintiff's Property, causing irreparable harm.

15.     **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing
Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware
with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times
relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA

5

and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

16.     3M is the only company that manufactured and/or sold AFFF containing PFOS.

17.     **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

18.     **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

19.     **ANGUS:** Defendant Angus Fire maintains corporate headquarters in Bentham, United Kingdom. Angus Fire manufactured, marketed and sold AFFF products that contained PFOA.

20.     **ANSUL:** Defendant Ansul Company is a corporation organized and existing under the laws of the State of Wisconsin. This Defendant manufactured, marketed, and sold AFFF products that contained PFOA.

21.     **ARCHROMA MANAGEMENT LLC:** Defendant Archroma Management, LLC, is a foreign limited liability company registered in Switzerland, with a principal business address of Neuhofstrasse 11, 4153 Reinach, Basel- Land, Switzerland.

22.     **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

23.    **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

24.    **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

25.    **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

26.    **CARRIER:** Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

27.    **CHEM INC.:** Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521.

28.    **CHEMDESIGN:** Defendant Chemdesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

29.    **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

7

30.    **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.

31.    In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

32.    **CHEMOURS FC:** Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company that conducts business throughout the United States. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

33.    **CHUBB:** Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to Chubb Fire & Security Ltd., Chubb Security, P.L.C., Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. Chubb is part of UTC Climate, Controls & Security, a unit of United Technologies Corporation.

34.    **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

8

35.    **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

36.    **DEEPWATER:** Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward, Oklahoma 73801.

37.    **DUPONT:** Defendant E. I. Du Pont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

38.    **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont.

39.    Upon information and belief, Corteva was originally formed in February 2018 as a wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

40.    Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc., DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon information and belief, New DuPont retained assets in the specialty products business lines, as well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

41.    **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523.

9

Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

42.    **KIDDE PLC:** Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

43.    **KIDDE-FENWAL:** Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 400 Main Street, Ashland, Massachusetts 01721. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (collectively, "Kidde/Kidde Fire").

44.    **NATIONAL FOAM:** Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam manufactures the Angus Fire brand of products and is the successor-in-interest to Angus Fire Armour Corporation (collectively, "National Foam/Angus Fire"). This Defendant manufactured and sold AFFF that contained PFOA.

45.    **NATION FORD:** Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.

46.    **RAYTHEON TECHNOLOGIES CORP.:** Defendant Raytheon Technologies Corporation (f/k/a United Technologies Corporation) ("Raytheon Tech f/k/a United Tech") is a Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032.

10

47.    **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

48.    Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

49.    Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

50.    **UTC:** Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation with its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. UTC was a subsidiary of United Technologies Corporation.

51.    Upon information and belief, Defendant John Does 1-49 were manufacturers and/or sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time the Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

52.    All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the state of Massachusetts.

53.     Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

54.     The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.     JURISDICTION & VENUE

55.     This Court has jurisdiction pursuant to M.G.A.212 § 3 because this is a civil action for damages in an amount that exceeds the minimal jurisdictional limits of this Court.

56.     Venue is appropriate in this county because it is the county in which Plaintiff is located and has its usual place of business.

### IV.     FACTUAL ALLEGATIONS

*A.     THE PFAS CONTAMINANTS AT ISSUE: PFOA AND PFOS*

57.     Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

58.     PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

59.     PFOA and PFOS are stable, man-made chemicals.  They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

60.     Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and humanblood serum.[2]

61.     Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

62.     Notably, from the time these two compounds were first produced, information has since emerged showing negative health effects caused by exposure to PFOA and PFOS. According to the EPA, "studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth

---

[2] *See* Agency for Toxic Substances and Disease Registry, "Per- and Polyfluoroalkyl Substances and Your Health," available at https://www.atsdr.cdc.gov/pfas/index.html#:~:text=Learn%20more-
,Human%20exposure%20to%20per%2D%20and%20polyfluoroalkyl%20substances%20(PFAS)%20is,territorial%2C
%20tribal%2C%20state%2C%20and (last accessed Sept. 21, 2021).

[3] *See* EPA, "Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA)," EPA Document Number: 822-R-16-005 (May 2016) at 55, available at https://www.epa.gov/sites/default/files/2016-
05/documents/pfoa_health_advisory_final-plain.pdf (last accessed Sept. 21, 2021); EPA, "Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS)," EPA Document Number: 822-R-16-004 (May 2016) at 55, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_health_advisory_final_508.pdf (last accessed Sept. 21, 2021).

weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g.,

tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other

effects (e.g., cholesterol changes).[4] The EPA has warned that there is suggestive evidence of the

carcinogenic potential for PFOA and PFOS in humans.[5]

63.    Additionally, the EPA has noted that "drinking water can be an additional source

[of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have

contaminated water supplies." In communities with contaminated water supplies, "such

contamination is typically localized and associated with a specific facility, for example [...] an

airfield at which [PFOA/PFOS] were used for firefighting."[6]

64.    EPA continues to research the effects of PFAS.  In June 2022, after evaluating over

400 studies published since 2016 and applying human health risk assessment approaches, tools, and

models, EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure

at which negative outcomes could occur are much lower than previously understood when the

agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt).  EPA therefore

announced new Interim Updated Health Advisory levels for PFOA of 0.004 ppt and 0.02 ppt for

PFOS.[7]

---

[4] See EPA, "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/sites/default/files/2016-06/documents/drinkingwaterhealthadvisories_pfoa_pfos_updated_5.31.16.pdf (last accessed Sept. 21, 2021).

[5] See EPA, "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)," Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed Sept. 21, 2021).

[6] See EPA, "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/sites/default/files/2016-06/documents/drinkingwaterhealthadvisories_pfoa_pfos_updated_5.31.16.pdf (last accessed Sept. 21, 2021).
[7] EPA, "Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)," EPA Document Number 822-F-22-002, available at https://www.epa.gov/system/files/documents/2022-06/technical-factsheet-four-PFAS.pdf (last accessed June 30, 2022).

14

B.   *AQUEOUS FILM-FORMING FOAM (AFFF) WAS A PRODUCT CONTAINING PFOS AND/OR PFOA AT THE RELEVANT TIME PERIOD*

65.   Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

66.   Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

67.   The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. PFHxS is also formed during this process. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

68.   When used as the Defendants intended and directed, the AFFF manufactured and/or sold by the Defendants released PFOA and/or PFOS into the environment.

69.   Once PFOA and PFOS are free in the environment, they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

70.   Notably, AFFF can be made without PFOA and PFOS. As such, fluorine-free foams do not release PFOA and/or PFOS into the environment.

71.   Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to the ongoing contamination and damages to Plaintiff's Property.

15

72.     Defendants' Fluorosurfactant Products have been used for their intended purposes in the process of fire protection, training, and response activities within Connecticut for many years. During these activities, Defendants' Fluorosurfactant Products were used as directed and intended by the manufacturer, which allowed PFOA and PFOS to migrate through the subsurface and into the groundwater, enter into Plaintiff's property, thereby contaminating Plaintiff's wells and property, as well as causing other extensive and ongoing damages to Plaintiff's Property.

73.     Due to the chemicals' persistent nature, among other things, these chemicals have caused, and continue to cause, significant injury and damage to Plaintiff and Plaintiff's Property.

C.     _DEFENDANTS' KNOWLEDGE AND CONCEALMENT OF THE DANGERS INVOLVED_

74.     On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

75.     At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

76.     For instance, in 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a

person up to 1.5 years to clear just half of the accumulated PFOS from their body after all

exposures had ceased.[8]

77.    By the early 1980s, the industry suspected a correlation between PFOS exposure

and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in

workers' bodies and birth defects in children of workers.

78.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in

Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed

workers, finding two of seven children born to female plant workers between 1979 and 1981 had

birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[9]

79.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the

bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this

present trend with serious concern. It is certainly possible that [...] exposure opportunities are

providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[10]

80.    Notwithstanding their respective knowledge of the dangers involved with AFFF

containing PFOA and/or PFOS, Defendants negligently and carelessly: (1) designed, manufactured,

marketed, and/or sold AFFF containing PFOA and/or PFOS; (2) issued instructions on how AFFF

should be used and disposed of (namely, by washing the foam into the soil and/or waste water

disposal systems), thus improperly permitting PFOA and/or PFOS to contaminate soil and

groundwater; (3) failed to recall and/or warn users of AFFF, negligently designed products

containing or degrading into PFOA and/or PFOS, of the dangers of soil and groundwater

---

[8] See Envtl. Working Group ("EWG"), "New Data on Half Life of Perfluorochemicals in Serum," available at
http://www.ewg.org/research/dupont-hid-teflon-pollution-decades (last accessed Sept. 21, 2021) (in particular, please
refer to the "Letter from 3M to Office of Pollution Prevention and Toxics," referenced in the article).

[9] See id. (in particular, please refer to the "C8 Blood Sampling Results, Births and Pregnancies" Memorandum
referenced in the article).

[10] See id. (in particular, please refer to the "Organic Fluorine Levels" Memorandum referenced in the article).

contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFOA and/or PFOS.

81.    As a direct result of Defendants' acts alleged in this Complaint, Plaintiff's property has been contaminated, and will continue to be contaminated, with PFOA and PFOS. This has created a significant environmental and public health hazard until such contamination may be remediated. As a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA and PFOS contamination of its property at significant expense, loss and damage to Plaintiff.

82.    Defendants had a duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products, but they breached this duty. Defendants moreover breached their duty to minimize the environmental harm caused by PFOA and PFOS. Moreover, Defendants failed to warn Plaintiff of the known risks for environmental and health hazards arising from the usage of Defendants' Fluorosurfactant Products in their intended manner for its intended purpose.

D.    THE HARM TO PLAINTIFF RESULTING FROM PFOA AND PFOS CONTAMINATION

83.    PFOA, PFOS, and PFHxS have been detected in varying amounts, at varying times in water extracted from Plaintiff's wells or drawn from surface water supplies. PFOA and PFOS have been detected in Plaintiff's water supplies at levels above the Massachusetts' Maximum

Contaminant Level ("MA MCL") for PFAS6[11] and/or the federally advised Health Advisory Level for PFOA and PFOS.

84.     The detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in Plaintiff's Property in varying amounts and at varying times has resulted, and will continue to result, in significant injury and damage to Plaintiff. It is the contention of Plaintiff that any detectible level of PFOA and/or PFOS in its groundwater source, well water, or elsewhere on its property requires investigation, remediation and monitoring.

85.     Plaintiff has conducted and continues to conduct sampling, studies, and investigations related to PFAS, which requires funding by Plaintiff, including costs to conduct sampling, costs for its personnel to supervise the assessments, costs to develop PFAS treatment approaches, and costs to analyze available alternatives.

86.     The invasion of Plaintiff's Property with PFOA and PFOS is continuous and recurring, as new contamination flows regularly and constantly into Plaintiff's Property each day—the result of which is a new harm to the Plaintiff and its property in each and every occurrence.

87.     The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the limited subterranean supplies of fresh drinking water on which Plaintiff's wells depend. Plaintiff's interests in protecting the quality of its citizens' limited drinking water supplies constitutes a reason for seeking damages sufficient to restore such drinking water supplies to their pre-contamination condition.

---

[11] *See* 310 CMR 22.00.  On October 2, 2020, the MassDEP published final regulations establishing a drinking water standard, or a Maximum Contaminant Level (MCL), for the sum of six per- and polyfluoroalkyl substances (PFAS). The MCL is 20 parts per trillion (ppt) for the sum of six PFAS compounds: perfluorooctanesulfonic acid (PFOS), perfluorooctanoic acid (PFOA), perfluorohexane sulfonic acid (PFHxS), perfluorononanoic acid (PFNA), perfluoroheptanoic acid (PFHpA), perfluorodecanoic acid (PFDA).

19

88.     Through this action, Plaintiff seeks to recover damages (including but not limited to compensatory, punitive, and/or consequential damages) arising from continuous and ongoing contamination of Plaintiff's Property by Defendants' Fluorosurfactant Products. Such damages moreover include, but are not limited to, the past and future incurred costs associated with the investigation, remediation, restoration, monitoring, and treatment of Plaintiff's Property.

## FIRST CAUSE OF ACTION
BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY DEFECTIVE DESIGN

89.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

90.     Defendants were in the business of producing, making, fabricating, constructing, designing, marketing, and selling AFFF containing PFOA and/or PFOS.

91.     All of Defendants' AFFF products were manufactured for placement into trade or commerce.

92.     Defendants marketed and sold AFFF for use in controlling and extinguishing aviation, marine, fuel and other shallow spill fires.

93.     As manufacturers, Defendants owed a duty to all persons whom its products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous in design for its reasonably anticipated use.

94.     By manufacturing and selling PFOA/PFOS-containing AFFF, Defendants warranted that such AFFF was merchantable, safe, and fit for ordinary purposes.

95.     Defendants breached that warranty as PFOA/PFOS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

a. PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

b. Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

c. PFOA and/or PFOS pose significant threats to public health; and,

d. PFOA and/or PFOS create real and potential environmental damage.

96. Defendants knew of these risks associated with PFOA and PFOS, and failed to use reasonable care in the design of its AFFF products.

97. AFFF containing PFOA and/or PFOS poses greater danger to the environment than would be expected by ordinary persons such as Plaintiff and the general public.

98. At all times, Defendants were capable of making AFFF that did not contain PFOA/PFOS. Reasonable alternative designs existed which were capable of preventing the Plaintiff's damage.

99. The risks posed by PFOA/PFOS-containing AFFF far outweigh the products' utility as a flame-control chemical.

100. The likelihood that PFOA and/or PFOS-containing AFFF would be spilled, discharged, disposed of, or released onto land and contaminate the Plaintiff's property and the gravity of that damage far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

101. Had Plaintiff known of these dangers, it would not have purchased AFFF containing PFOA and PFOS.

102. Plaintiff relied on Defendants' implied warranty that their AFFF products were safe for use in outdoor fire emergency scenarios and fire control exercise.

21

103.    As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFOA/PFOS-containing AFFF, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

104.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's property rights.

**SECOND OF ACTION**
BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY FAILURE TO WARN

105.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

106.    As a manufacturer of PFOA/PFOS-containing AFFF, Defendants had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including Plaintiff, the public, and public officials.

107.    PFOA/PFOS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

a.    PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

b.    Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

c.    PFOA and/or PFOS pose significant threats to public health; and

     d.   PFOA and/or PFOS create real and potential environmental damage.

108.     Defendants knew of the health and property damage risks associated with PFOA/PFOS- containing AFFF, and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with PFOA/PFOS- containing AFFF or an instruction that would have allowed Plaintiff to avoid the damage to its property.

109.     Despite Defendants' knowledge of the environmental and human health hazards associated with the use and/or disposal of PFOA/PFOS-containing AFFF in the vicinity of subterranean drinking water supplies, including contamination of public drinking water supplies with PFOA and/or PFOS, Defendants failed to issue any warnings, instructions, recalls, or advice regarding PFOA/PFOS-containing AFFF to Plaintiff, governmental agencies or the public.

110.     Plaintiff would have heeded legally adequate warnings and would not have purchased products containing PFOA and PFOS, or would have taken steps to ensure PFOA/PFOS- containing AFFF was treated differently to prevent potential exposure and contamination of the environment.

111.     As a direct and proximate result of Defendants' failure to warn, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

112.     Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's property rights.

## THIRD CAUSE OF ACTION
NEGLIGENCE

113.   Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

114.   As a manufacturer and seller of PFOA/PFOS-containing AFFF, Defendants owed a duty to Plaintiff and to all persons whom its products might foreseeably harm to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFOA/PFOS-containing AFFF.

115.   Defendants knew or should have known that PFOA and/or PFOS were leaching from AFFF used in outdoor fire control exercises and fire emergency scenarios and contaminating water resources.

116.   Despite the fact that Defendants knew that PFOA and PFOS are toxic, can contaminate water resources and are possible carcinogens, Defendants negligently:

    a.   Designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFOA/PFOS-containing AFFF;

    b.   Issued instructions on how AFFF should be used and disposed of, thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around the Plaintiff's wells;

    c.   Failed to recall and/or warn the users of AFFF of the dangers of groundwater contamination as a result of standard use and disposal of this product; and,

    d.   Failed and refused to issue the appropriate warning and/or recalls to the users of PFOA/PFOS-containing AFFF, notwithstanding the fact that Defendants know the identity of the purchasers of the AFFF.

117.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

118.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's property rights.

### FOURTH CAUSE OF ACTION
TRESPASS

119.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

120.    Plaintiff is the owner, operator and actual possessor of real property and improvements used for collecting drinking water.

121.    Defendants manufactured, distributed, marketed and promoted PFOA/PFOS-containing AFFF with the actual knowledge and/or substantial certainty that PFOA/PFOS-containing AFFF would, through normal use, release PFOA and/or PFOS that would migrate into subterranean groundwater, causing contamination.

122.    Defendants negligently, recklessly, and/or intentionally produced and marketed PFOA/PFOS-containing AFFF in a manner that caused PFOA and PFOS to contaminate Plaintiff's property.

123.    As a direct and proximate result of Defendants' trespass, Plaintiff has suffered and continues to suffer property damage requiring investigation, remediation and monitoring costs to be determined at trial.

124.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiff's property rights.

**FIFTH CAUSE OF ACTION**
FRAUDULENT TRANSFER
(Against DuPont and Chemours only)

125.    Plaintiff realleges and reaffirms each and every allegation set forth in the all proceeding paragraphs as if fully restated in this cause of action.

126.    Plaintiff seeks equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

127.    Prior to and during 2015, Defendant DuPont was in the business of producing, making, fabricating, designing, marketing, and selling chemical feedstocks containing PFOA and/or chemicals that can degrade into PFOA and/or other PFAS as part of their "performance chemicals business."

128.    Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary, and used it to spin off DuPont's "performance chemicals business" products line in July 2015.

129.    In addition to the transfer of the "performance chemicals business" products line, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFOA and other PFAS.

130.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had

26

knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture, design, marketing and sale of PFOA or other PFAS components for the use in AFFF products.

131.    As a result of the transfer of assets and liabilities to Chemours described in this Amended Complaint, DuPont limited the availability of assets to cover judgements for all liability for damages and injuries from the manufacture, design, marketing, sale of PFOA or other PFAS components for the use in AFFF products.

132.    DuPont has (a) acted with intent to hinder, delay and defraud creditors, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably insufficient in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

133.    Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of creditors, such as Plaintiff, that have been damaged as a result of DuPont's actions as described in this Amended Complaint.

134.    Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

135.    Plaintiff seeks to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severally liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1. Compensatory damages according to proof including, but not limited to:

    a. Costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFOA/PFOS contamination in Plaintiff's drinking water supplies, wells, system, and facilities;

    b. Costs and expenses related to past, present, and future treatment and remediation of PFOA and/or PFOS contamination of Plaintiff's water supplies, wells, system, and facilities;

    c. Costs and expenses related to past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFOA and/or PFOS in Plaintiff's water supplies, wells, system, and facilities.

2. Avoiding the transfer of DuPont's liabilities for the claims brought in this Amended Complaint;

3. Punitive damages;

4. Consequential damages;

5. Pre-judgment and post-judgment interest;

6. Any other and further relief as the Court deems just, proper, and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Massachusetts Rule of Civil Procedure 38, Plaintiff respectfully demands a jury trial.

Dated:  January 4, 2023

                      Respectfully submitted,

                      */s/ Richard Sandman*
                      Richard M. Sandman (BBO # 440940)
                      **SANDMAN LAW, LLC**
                      501 Congress Street, Suite 2021
                      Boston, MA 02210
                      Telephone:  (978) 886-0640
                      rich@sandman-law.com

                      Scott Summy (TX Bar No. 19507500)
                      Cary McDougal (TX Bar No. 13569600)
                      Carla Burke Pickrel (TX Bar No. 24012490)
                      Jason Julius (TX Bar No. 24131101)
                      **BARON & BUDD, P.C.**
                      3102 Oak Lawn Avenue, Suite 1100
                      Dallas, TX 75219-4281
                      Telephone: (214) 521-3605
                      Fax: (214) 520-1181
                      ssummy@baronbudd.com
                      cmcdougal@baronbudd.com
                      cburkepickrel@baronbudd.com
                      jjulius@baronbudd.com

                      Philip F. Cossich, Jr.
                      Brandon J. Taylor (LA Bar No. 27662)
                      Darren Sumich (LA Bar No. 23321)
                      David A. Parsiola (LA Bar No. 21005)
                      Christina M. Cossich (LA Bar No. 32407)
                      Andrew Cvitanovic (LA Bar No. 34500)
                      Luana N. Smith (LA Bar No. 35534)
                      **COSSICH, SUMICH, PARSIOLA**
                      **& TAYLOR, LLC**
                      8397 Highway 23, Suite 100
                      Belle Chasse, LA 70037
                      Telephone: (504) 394-9000

                      ***Attorneys for Plaintiff***